**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KELLEY LENAHAN,**      ) | |
|      ) | |
|   **Plaintiff,**      ) | |
|      ) | |
|   **v.**      ) | **Civil Action File No.** |
|      ) | _____ |
| **FRC BALANCE LLC dba TRUE**   ) | |
| **FOOD KITCHEN,**      ) | |
|      ) | |
|   **Defendant.**      ) | |

**COMPLAINT**

The Plaintiff, Kelley Lenahan ("Lenahan") brings this action for:

i)    race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981");

ii)   sex harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq.; and

iii)  negligent retention in violation of Georgia tort law.

Plaintiff seeks equitable relief; general, compensatory, and punitive damages; costs;

and attorneys' fees, and other appropriate relief for the injuries she suffered from the unlawful conduct of FRC Balance LLC ("FRC LLC") dba True Food Kitchen ("TFK").

## Parties

1.

Plaintiff Lenahan is currently a resident and citizen of the State of Georgia.

2.

Defendant FRC LLC is an Arizona limited liability company with its principal office address located at 4455 E. Camelback Road, Suite A1115, Phoenix, Arizona 85018. FRC LLC regularly conducts business within the State of Georgia, including as related to the facts set forth in this Complaint. FRC LLC is registered to do business within the State of Georgia. The Georgia registered agent for FRC LLC is CT Corporation System, 289 S. Culver St. Lawrenceville, Georgia 30041.

3.

FRC LLC owns and operates restaurants under the name of True Food Kitchen ("TFK") including TFK restaurants located and operating in the Northern District of Georgia.

## Jurisdiction and Venue

4.

This Court has original jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. §§ 1331, § 1343, and § 1367.

5.

Venue in this district and division is proper under 28 U.S.C. § 1391 as Defendants reside and maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

6.

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims which form the basis of the Complaint.

7.

Plaintiff satisfied all administrative prerequisites to institute this action under Title VII. Specifically, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on May 15, 2020. The EEOC issued a Notice of Right to Sue for Plaintiff's Charges on August 19, 2021. Plaintiff has brought this suit within ninety (90) days of receipt of the Notice of

Right to Sue.

8.

Plaintiff is a citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

9.

At all times relevant to this action, Plaintiff was an employee of Defendant True Food Kitchen ("TRK") within the meaning of Title VII of the Civil Rights Act.

10.

At all times relevant to this Complaint, Defendant employed more than fifteen employees.

**<u>Factual Allegations</u>**

11.

On April 9, 2019, Lenahan received an offer "Offer" of employment from TFK to work as an Assistant General Manager ("AGM") position at "True Food Kitchen Atlanta."  The Offer further provided,

<u>Effective Date</u>: Your start date is 04/17/2019.

<u>Compensation</u>: … annual salary of $85,000 …

4

Benefits: … a competitive complement of benefits (including medical, dental, vision, life insurance, 401 (k) savings & retirement, and paid time off plans) that you are eligible to participate in subject to the requirements of such plans.

Bonus: … eligible to participate in the Restaurant Management Bonus Plan: … based on the restaurant's performance against critical measure that drive the success of our business.

The Offer was signed by Danielle Berman on behalf of TFK. The Offer included, "This letter forms the complete and exclusive statement of employment between you and True Food Kitchen."  A footer of the Offer contained the following address: "4455 Camel Back Rd., Ste. A-115, Phoenix, Az 35081."

12.

On April 17, 2029 Lenahan began her TFK training at the TFK restaurant in Nashville, Tennessee.

13.

On May 17, 2019, Lenahan transferred back to the TFK restaurant located at Lenox Square, Atlanta, Georgia (TFK Lenox) where she completed her training on June 2, 2019.

14.

Following the completion of her training, Lenahan continued to work at

TFK Lenox as an AGM.

15.

While working at TFK Lenox, Lenahan experienced and observed offensive

and demeaning conduct directed at women. For example, in late August or early

September, 2019 (specific date unknown) TFK's Regional Chef Jeff Smith, was

spending the day at TFK Lenox. Nick Cassady was the Executive Chef at TFK

Lenox. When Regional Chef Smith stepped away during a lunch shift, Chef

Cassidy became verbally abusive toward the female employees on the line team.

Cassidy yelled at Sous Chef Meg Lipari (female) to "get the f - - k off the line" in

front of the entire team. Chef Cassidy also yelled and cursed at line cook Whitney

___ (female), who was several months pregnant. Whitney needed to use the

restroom, but Chef Cassidy would not allow her to leave. Cassidy's tirade appeared

to cause Whitney to become emotionally frustrated and distraught.

16.

Lenahan called Chef Smith and told him about Chef Cassidy's belligerent

conduct. When Chef Smith returned to the restaurant, Cassidy had calmed down.

17.

During Lenahans' work at TFK Lenox, Chef Cassidy often arrived late to work, sometimes as much as one and one-half hours after his scheduled start time. On several occasions, Cassidy left work mid-day, sometimes on the restaurant's busiest days, Saturday or Sunday. Upon on of these returns, Cassidy said that he let out his previous night's date from his apartment. On one occasion, Cassidy left the restaurant during the middle of the day for close to two hours. He later told other TFK managers that he had to have sex again before returning to work. (His actual language was more graphic.)

18.

Chef Cassidy regularly displayed offensive and demeaning conduct towards the TFK female workers.

19.

Reed Bowlby worked as the TFK's Regional Manager responsible for TFK restaurants in certain Southeastern states including Georgia, Tennessee, and Florida. In August or September, 2019, Bowlby commented to Lenahan that TFK had never opened a new store with an entirely new team.

20.

In September 2019, Bowlby offered Lenahan the position of General Manager

at a new TFK restaurant to be located in Alpharetta, Georgia ("TFK Alpharetta").

21.

By September 27, 2019, TFK had selected Chef Adam Rowles, AGM Justin Rusch, and Sous Chef Meg Lipari as part of the new management team for TFK Alpharetta. While wrapping up responsibilities at TFK Lenox, Rowles, Rusch, and Lepari each commented how happy they were to leave the negative, passive-aggressive environment at TFK Lenox created predominately by Chef Nick Cassidy.

22.

On September 30, 2019, Lenahan and her new management team reported to TFK Alpharetta to begin preparing for the opening.

23.

During the month of October, Lenahan and the rest of the management team prepared for the new opening scheduled for the second week of November, 2019. The primary hiring for most employees at TFK Alpharetta would occur during the month of October.

24.

Although TFK intended to open TFK Alpharetta with a full management team consisting of a general manager, an assistant general manager, and two

assistant managers, TFK failed to meet this goal. Bowlby had hired Anna Bailey and Russell Hurn to work as the assistant managers, but their training at other TFK restaurants prevented their arrival at TFK Alpharetta until closer to the opening.

25.

During October TFK sent a team to help prepare for the TFK Alpharetta opening. The team included Eddie Talbot, a trainer, and Victoria Perez, temporary assistant manager. Although lacking a full management team, Lenahan and her team properly prepared and moved toward the opening.

26.

On October 24 or 25, Reed Bowlby called Lenahan and said that someone called him and claimed that Lenahan had belittled someone. Bowlby would not identify the alleged caller. Bowlby asked Lenahan if "[she] could handle [the opening]?" Lenahan assured him that she could handle the opening.

During the October 24 or 25 call with Lenahan, Bowlby also stated that the caller had claimed that Lenahan had discussed quitting. Lenahan assured Bowlby that she never said that and had no intention of quitting. Again, Bowlby would not identify the caller.

27.

On Wednesday, November 6, 2019, TFK Alpharetta opened as scheduled.

9

28.

On Tuesday, November 12, 2019, AGM Justin Rusch received a text from Bowlby asking for a private conversation. When Justin returned from his call with Bowlby, Rusch told Lenahan that the corporate trainer, Eddie Talbot, had reported that Lenahan had spoken harshly to an employee. This incident was the result of a server who had barged into a manager's meeting being conducted by Lenahan. Lenahan told the server, "Not now." At the time, Lenahan was encouraging the other managers to be patient and trust that everyone's schedules would lighten up. (At the time, everyone was working six days per week.)

29.

In the November 12, 2019 conversation, Rusch also told Lenahan that Bowlby had asked him (Rusch) whether Lenahan or Hurn should be terminated.

30.

As the store continued its November opening, Bowlby continued to communicate directly with AGM Rusch about various matters. Other than the October 24 or 25 call, Bowlby never spoke directly to Lenahan about her performance during October.

31.

On Wednesday, November 13, 2019 and after learning about Bowlby's

direct conversations with Rusch, Lenahan drafted and submitted a two-page letter to True Food Kitchen's Chief People Officer, Peggy Rubenzer. In the letter, Lenahan described Bowlby's private conversation with Rusch in which Bowlby discussed Lenahan's performance and whether Hurn or Lenahan should be fired from TFK. In her letter, Lenahan also described the conduct of Chef Cassidy at TFK Lenox and then posed the question,

> "Why is all of this behavior seemingly acceptable when my signaling to an employee that she has mis-stepped be so off-putting that it warranted a phone call to my AGM?
>
> "During the night and this morning I was ill so I am not in the restaurant today. My hope is to have a conversation with you or someone else for advice and next steps…"

## 32.

Ms. Rubenzer responded to Lenahan's letter saying she wanted to talk with Lenahan and scheduled a meeting time.

## 33.

At approximately 11:30 am on November 15, 2019, Lenahan and Rubenzer discussed the content of Lenahan's letter. Rubenzer confirmed that Chef Cassidy's behavior was unacceptable but could not discuss specifics. When Lenahan raised

Bowlby's private conversations with Rusch, Rubenzer suggested that Lenahan and Bowlby discuss the matter. Rubenzer never responded to Lenahan's question about TFK and Bowlby overlooking Chef Cassidy's conduct while Bowlby began a process of exploring Lenahan's dismissal with Lenahan's subordinate without even raising the alleged concerns with Lenahan.

34.

Following the 11:30 am call between Lenahan and Rubenzer, Bowlby announced a three-way call among Lenahan, TFK HR Director Josh Sequin, and Bowlby. For the first time, Bowlby included Lenahan while discussing concerns about Lenahan's performance. Bowlby never explained why he did not raise the issues directly with Lenahan or why he spoke directly with Rusch to the exclusion of Lenahan. Although Lenahan raised the question with Rubenzer in Lenahan's earlier conversation with Rubenzer, neither Sequin nor Bowlby addressed why Cassidy's abusive conduct continued to be overlooked. At the end of the call, Bowlby and Sequin announced that they would prepare a performance improvement plan for Lenahan.

35.

As of Friday, November 15, 2019, the TFK Alpharetta restaurant had been open ten days.

36.

On Saturday, November 23, 2019, Bowlby presented to Lenahan the "30 Day Performance Improvement Plan."  This document contained a lengthy list of store-opening tasks. Many of the tasks had already been completed; others pertained to the normal opening of a restaurant. The document also stated, "Failure to make immediate and continued improvements in all areas outlined above, will result in the evaluation of your employment and may include termination."  To date TFK Alpharetta had been open less than three weeks.

37.

In December, Hurn's performance continued to be extremely problematic. Lenahan and other managers became concerned about Hurn who appeared to be under the influence of a drug or alcohol. Hurn's functions included closing the restaurant which required post-closing cleaning, financial administration, and other tasks that prepared the restaurant for the next day's opening. Hurn often failed to clean the restaurant and properly calculate end-of-day cash counts. Lenahan shared with Bowlby Hurn's conduct and apparent gross mishandling or miscalculation of cash. Bowlby did not take any action.

38.

On December 21, 2019, Executive Chef Adam Rowles and Chef Lipari

presented Lenahan with a mug shot of Hurn. Several days prior, Hurn's wife had called and reported that he was sick and unable to work. Lipari then learned that Hurn had been arrested and jailed for posting an online sex advertisement, eventually soliciting a 14-year-old girl who turned out to be an undercover officer. Lenahan then suspended Hurn pending completion of the investigation. TFK finally discharged Hurn for being untruthful about the reason for his absence.

39.

During the Winter of 2019 – 2020, Chef Cassidy continued to work at TFK Lenox. In December 2019, Chef Meg Lipari showed Lenahan an article containing a picture of Chef Cassidy and a sexual misconduct complaint about Cassidy before he joined TFK. According to Chef Lipari, Cassidy's sexually abusive conduct was common knowledge among the team at Lenox.

40.

In January, 2020, Lenahan learned of another alleged complaint directed towards her. According to Bowlby,  someone had accused Lenahan of using the word "baboon" in a group line up. Bowlby and TFK refused to disclose the alleged accuser. Lenahan later remembered addressing a group of employees at TFK Alpharetta but used the word "buffoon." After learning of the alleged complaint, Lenahan asked Andrea Cajuste, a restaurant employee, if she heard "baboon" or

"buffoon." Cajuste said that she heard "buffoon." Once again, neither Bowlby nor any other TFK representative discussed the matter with Lenahan or investigated the apparent confusion.

41.

In January 2020, Lenahan discharged a female server for creating a hostile work environment. Upon her departure and in front of Chef Rowles, the discharged employee called Lenahan a "a white racist bitch." A week or so later, the discharged employee called the restaurant looking for her paycheck. When Lenahan came to the phone, the discharged server again called Lenahan "a white racist bitch" and hung up. At the end of the conversation, Lenahan reported the call to Bowlby and TFK HR.

42.

In another January 2020 incident, Chef Rowles discharged a pregnant African American female due to poor performance, poor attitude, and attendance issues. During her employment, the employee often referred to her "white managers …" On information and belief, the employee was rehired when she threatened to file an EEOC charge. Chef Rowles and other managers at TFK Alpharetta were amazed that Bowlby and TFK would reinstate the African American female given her policy violations, video evidence, and the objections of

15

her manager.

43.

On February 10, 2020, Bowlby met with Lenahan at TFK Alpharetta and stated that complaints about her "continued to come in." Bowlby refused to identify the alleged complainers and would not provide any specific information. Based on this meeting, Lenahan reasonably believed that her employment with TFK would be terminated.

44.

On the morning of February 24, 2020 and without advance notice, Bowlby traveled to FTK Alpharetta ahead of Lenahan. When Lenahan arrived at the restaurant, Bowlby presented her with a severance agreement containing the terms of her discharge. The recent circumstances leading up to the 24th, including Bowlby's comments at the February 10 meeting, reasonably caused Lenahan to believe that she could be discharged. To respond to the threat of discharge, Lenahan had prepared a resignation letter. When Bowlby presented the severance agreement to Lenahan, she responded with the resignation notice. At the end of the meeting, Lenahan told Bowlby that she found it interesting that Bowlby gave Hurn the option to resign but did not give her the same option.

## Causes of Action

### Count I

### Race Discrimination in Violation of Title VII and Section 1981

45.

Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully restated herein.

46.

Plaintiff is Caucasian and member of a protected class under Title VII and Section 1981.

47.

At all times relevant to this action, the relationship between Plaintiff and Defendant was a relationship of "employee" to "employer" within the meaning of Title VII.

48.

Defendant discriminated against Plaintiff on the basis of race.

49.

Defendant's termination of Plaintiff was a materially adverse employment action.

17

50.

Plaintiff's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

51.

Plaintiff was qualified to perform her duties as an employee of Defendant.

52.

Defendant's actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

53.

Defendant has willfully and wantonly disregarded Plaintiff's statutory rights and engaged in discrimination in bad faith.

54.

As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which she is entitled to recover damages.

**Count II**
**Race Retaliation in Violation of Title VII and Section 1981**

55.

 Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully restated herein.

56.

At all times relevant to this action, the relationship between Plaintiff and Defendant was a relationship of "employee" to "employer."

57.

At all times relevant to this action, Bowlby was an employee of TFK and was Plaintiff's direct supervisor.

58.

Title VII and Section 1981 make unlawful employer retaliation against an employee who reports or opposes harassment and discrimination based on race.

59.

Defendant unlawfully retaliated against Plaintiff by, among other things, terminating Plaintiff's employment because she opposed TFK's race discrimination and reported the discrimination to TFK's HR department.

60.

Defendant had knowledge of Plaintiff's participation in protected activities.

61.

As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count III**
**Sex Discrimination in Violation of Title VII**

62.

Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully restated herein.

63.

Plaintiff's sex is female and she is a member of a protected class under Title VII.

64.

At all times relevant to this action, the relationship between Plaintiff and Defendant was a relationship of "employee" to "employer" within the meaning of Title VII.

20

65.

Defendant discriminated against Plaintiff on the basis of sex.

66.

Defendant's termination of Plaintiff was a materially adverse employment action.

67.

Plaintiff's sex was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

68.

Plaintiff was qualified to perform her duties as an employee of Defendant.

69.

Defendant's actions constitute unlawful sex discrimination in violation of Title VII.

70.

Defendant has willfully and wantonly disregarded Plaintiff's statutory rights and engaged in discrimination in bad faith.

71.

As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered and continues to suffer the indignity of sex

discrimination, the invasion of her right to be free from sex discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish for which she is entitled to recover damages.

## Count IV
## Sexual Harassment in Violation of Title VII

Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully restated herein.

### 72.

Plaintiff's sex is female and she is a member of a protected class under Title VII.

### 73.

At all times relevant to this action, the relationship between Plaintiff and Defendant was a relationship of "employee" to "employer" within the meaning of Title VII.

### 74.

At all times relevant to this action, Bowlby was an employee of Defendant. Furthermore, Bowlby was Plaintiff's direct supervisor who had the authority to undertake and recommend tangible employment actions against Plaintiff.

75.

Defendant subjected Plaintiff and other female employees of TFK to unwelcome sexual harassment by exposing them to a sexually intimidating, offensive and hostile work environment that unreasonably interfered with the work performance and opportunities of Plaintiff and other female employees.

76.

Defendant knew or should have known of the continuous harassment in the workplace but failed to take reasonable preventative or corrective measures with respect to the hostile work environment and the unlawful sex-based treatment of Plaintiff.

77.

As a proximate and direct result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count V**
**Sex Retaliation in Violation of Title VII**

78.

Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully

restated herein.

79.

At all times relevant to this action, the relationship between Plaintiff and Defendant was a relationship of "employee" to "employer."

80.

At all times relevant to this action, Bowlby was an employee of TFK and was Plaintiff's direct supervisor.

81.

Title VII makes unlawful employer retaliation against an employee who reports or opposes harassment and discrimination based on sex.

82.

Defendant unlawfully retaliated against Plaintiff by, among other things, terminating Plaintiff's employment because she opposed TFK's sex discrimination and sex harassment, and she reported the discrimination and harassment to TFK's HR department.

83.

Defendant had knowledge of Plaintiff's participation in protected activities.

84.

As a proximate and direct result of Defendant's conduct, Plaintiff has

suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

## Count VI
## Negligent Supervision and Retention

85.

Plaintiff incorporates by reference the Paragraphs 1 through 44 as if fully restated herein.

86.

Defendant TFK knew, or in the exercise of ordinary diligence, should have known of Cassidy's sexual harassment of Plaintiff and other female employees of TFK.

87.

Defendant owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

88.

Defendant breached the aforementioned duty by negligently supervising and retaining its employees who continued to engage in sexually offensive and hostile conduct and therefore continued to expose Plaintiff to a hostile work environment.

Further, Defendant ratified, condoned, or adopted Cassidy's conduct via inaction.

89.

Defendant acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or her federally protected rights. Additionally, and in the alternative, Defendant acted recklessly toward Plaintiff and/or her federally protected rights. Accordingly, Defendant is liable to Plaintiff for all damages.

90.

As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

a.      a declaratory judgment that Defendant violated Title VII of the Civil Rights Act of 1964, Civil Rights Act of 1866, and Georgia tort law;

b.      a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act of

1964,  Civil Rights Act of 1866, and Georgia tort law;

c.       full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment;

d.        front pay to compensate Plaintiff for loss of earnings including future wages, benefits and pension, and loss of earnings potential;

e.       compensatory damages for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.       punitive damages for Defendant's intentional violation of the Civil Rights Act of 1866 and Georgia tort law;

h.       attorneys' fees, costs, and disbursements;

i.       pre- and post-judgment interest as allowed by law; and

j.       such further and additional relief as may be just and appropriate.

Respectfully submitted this 17th day of November, 2021.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725

Stanford IO Law Group LLC
P.O. Box 19161
Atlanta, GA 31126
Telephone:  404-991-7300
Facsimile:  404-991-7299
rstanford@siolaw.com

## **CERTIFICATION OF TYPE FONT AND SIZE**

Pursuant to LR 7.1D, the undersigned hereby certifies that the foregoing is composed of Times New Roman, size 14, and is proportionately spaced.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725